UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-CV-410-KSF

SHELBY G. LEMMONS,                                                                        PLAINTIFF

V.                         **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA,                                         DEFENDANT

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

This matter is before the Court on Defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction over Plaintiff's complaint filed under the Federal Tort Claims Act. [DE #12]. Plaintiff having filed no response to the foregoing motion, despite having been granted two extensions of time to do so,[1] this matter is ripe for review. For the reasons explained below, Defendant's motion to dismiss for lack of subject matter jurisdiction will be granted, and this case will be dismissed.

## BACKGROUND

Plaintiff Shelby G. Lemmons ("Lemmons"), a federal inmate at the Federal Correctional Institution in Butner, North Carolina ("FCI-Butner"), filed this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, concerning injuries he sustained while deboarding an airplane at Bluegrass Airport in Lexington, Kentucky, on May 25, 2007. At that time, he was being transported from the Federal Transfer Center in Oklahoma City, Oklahoma, to the United

---

[1] By Order of August 23, 2010, Plaintiff was given until September 15, 2010, to respond to the Defendant's motion to dismiss. [DE #16]. Thereafter, by Order of September 14, 2010, Plaintiff's response time was extended to October 4, 2010. [DE #19]. However, Plaintiff did not file a response and did not request additional time in which to respond.

States Penitentiary - Big Sandy in Inez, Kentucky. Lemmons, age 59 at the time he filed this action, describes himself as an elderly person and states that he is dependent on the use of a cane to help him walk. He claims that while he was descending the air-stairs placed on the side of the airplane at Bluegrass Airport, he stumbled and fell, due to a combination of his handicap and having to wear restraints, and fell down the air-stairs. Lemmons sustained injuries in the course of this fall and received medical treatment for those injuries.

Essentially, Lemmons contends that his injuries could have been prevented if officials had considered that he was physically unable to descend the air-stairs while wearing restraints and simultaneously having to use his cane to negotiate the stairs, and that officials were negligent in not providing him an alternative way to deboard the airplane. In his Complaint, Lemmons named the United States of America and the Justice Prisoner and Alien Transportation System ("JPATS") as Defendants.[2] Lemmons seeks $25,000,000.00 in compensatory damages.

## The Federal Tort Claims Act

Generally, the United States of America is immune from suit except where its sovereign immunity is explicitly waived, with the scope of any waiver being strictly construed. "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980). For there to be consent to the waiver of sovereign immunity, Congress must unequivocally express it in the statutory text. *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 929 (10th Cir.1996). If the government has

---

[2] On October 4, 2010, Plaintiff voluntarily dismissed his complaint against Justice Prisoner and Alien Transportation System. [DE #20]. The United States of America is the sole defendant.

waived sovereign immunity, the Court must strictly construe it in order to prevent an expansion beyond what Congress intended. *Pipkin v. U.S. Postal Serv.*, 951 F.2d 272, 275 (10th Cir.1991).

The FTCA, 28 U.S.C. §§ 2671-2680, provides a limited waiver of sovereign immunity. It neither creates a cause of action against the United States nor provides a means of enforcing federal statutory duties. *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994) (citing *Howell v. United States*, 932 F.2d 915, 917 (11th Cir. 1991); *Sellfors v. United States*, 697 F.2d 1362, 1365 (11th Cir. 1983), *cert. denied*, 468 U.S. 1204 (1984)). The FTCA constitutes the United States' consent to be sued in tort actions, and the FTCA defines the scope of district court jurisdiction to entertain FTCA lawsuits. The consent is "for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b). Such consent is limited to cases in which "a private individual [would be liable] under like circumstances." 28 U.S.C. § 2674. The FTCA applies to federal inmates' claims alleging personal injuries sustained while incarcerated because of negligence of government employees. *See United States v. Muniz*, 374 U.S. 150 (1963).

However, subject matter jurisdiction under the FTCA is further limited by its exceptions, codified at 28 U.S.C. §2680, which except the following:

> .... (a) Any claim based upon an act or omission of an employee of the Government, ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused....

28 U.S.C. § 2680. This exception to the FTCA, known as the discretionary function exception, bars an action against the United States of America, regardless of whether there was negligence under the law of the state where the act occurred, for decisions made at the policy or planning level, thereby

insulating the United States from liability for its agents and employee's performance of duties involving discretionary decisions. *See, United States v. Boyle*, 487 U.S. 500, 510-12 (1988). *Barnson v. United States*, 816 F.2d 549, 553 (10th Cir.), *cert. denied*, 484 U.S. 896 (1987) ("[f]actual issues concerning negligence are irrelevant to the central issue whether the federal officials' actions were discretionary."); *Pennbank v. United States*, 779 F.2d 175 (3d Cir. 1985) ("[t]he question of whether the agencies acted in a negligent manner is not relevant to our inquiry ... we will not consider whether there was a duty owed or whether such duty was breached. Rather, our focus is on the nature of the conduct."). Whether the discretionary function exception applies presents an issue of subject matter jurisdiction; thus, analysis of the exception's applicability must precede any negligence analysis. *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir.1998). The purpose of the discretionary function exception is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandesse (Varig Airlines)*, 467 U.S. 797, 814 (1984).

**Discussion/Analysis**

In *Berkovitz v. United States*, 486 U.S. 531 (1988), the Supreme Court established a two-part test for determining whether a claim fails within the discretionary function exception. First, the court must "consider wether the action is a matter of choice of the acting employee." *Id.*, at 536. If the action is one of choice, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991).

In the action *sub judice*, Lemmons complains of the choices made by the United States and/or

4

its agents when transporting him with 112 other prisoners. The choices made by U.S. Marshal's Service personnel, which he complains impacted him as one of the 113 inmates on the plane, include:

1. Providing "no assistance" down the stairway while he was "wearing a waist chain and handcuffs." Complaint, ¶2 (DE #1).

2. Creating an "unsafe exit" from the plane (presumably by using the 'air stairs')[3] with no concern for his safety. Complaint, §§ 5,6 (DE #1).

3. Failing to provide an "alternative exit" for him or "assistance" as he left the plane which "could have prevented" his slip and fall taking into consideration his physical condition. Complaint, §§ 5,6 (DE #1).

Other than noting that he, as a prisoner, was in the care and custody of JPATS,[4] Lemmons points to no statute, policy or regulation which mandates a particular procedure to be followed by JPATS or its employees with respect to boarding or deboarding an airplane. Thus, he has not established that the United States has violated any statute policy or regulation. *MacCaffray v. United States*, No. 2:97-CV-403, 1998 WL 560047, *3 (D. Vt. Aug. 27, 1998)(Unpublished)(the absence of governing statute, regulations, and USMS policy pertaining to prisoner transport regarding the use of safety belts indicated that the decision of the USMS not to install seat belts for prisoners in its

---

[3] "The air stairs which were provided by the Blue Grass, Lexington, KY, airport were of the motorized variety and appeared to be suited for the aircraft." U.S. Marshals Service Field Report (05/25/2007). Complaint (DE #1), Appendix II (DE # 1-3), pg. 3 or 6.

[4] Complaint, ¶¶1 & 5 (DE #1). JPATS, as a component of the U.S. Marshal's Service, is responsible for the "safe and secure transfer of prisoners within its custody or the custody of the Bureau of Prisons. 18 U.S.C. §§ 3621-22, 4002, 4006-08, 4013, 4082, 4046; 28 C.F.R. §§ 0.111(j), (k), (o). 18 U.S.C. §4086 and 28 C.R. R. §0.111(j).

transport vehicles was a "clear exercise of its judgment."); *Hernandez v. United States*, 83 F. Appx. 206 (9th Cir. 2003) (security measures are discretionary.); *Reynolds v. United States*, No. 4:04-cv-95/RV/EMT, 2006 WL 5400338, *5 (N.D. Fla. Jan. 30, 2006) (Unpublished) (decision not to provide seat belts in vehicle used to transport prisoners protected by the discretionary function exception because it involved balancing "security concerns posed by the use of safety belts, including the risk of prisoners escaping and the danger to Deputy Marshals by being in close proximity to prisoners during the securing and unlatching of safety belts, against the risk of injury to prisoners by not using the belts."); *Lopez v. Brady*, No. 4:CV-07-1126, 2008 WL 4415585, *15 (M.D. Pa. Sept. 25, 2008) (Unpublished) (decision not to pad basketball hoop poles in recreation yard susceptible to policy analysis, to wit: concerns that "weapons and contraband could be hidden within the padding and the pads themselves could be used as weapons, as an aid to escape, or as body armor or a shield in the event of an institution disturbance"); *Brown v. United States*, No. CV 00-0529(RR), 2001 WL 477250, *2 (E.D.N.Y. Mar. 19, 2001) (Unpublished) ("[D]ecision about how best to anchor a basketball hoop to allow prisoners to play the sport with minimal risk to prison security implicates a discretionary policy choice...."); *Fanoele v. United States*, 975 F.Supp. 1394 (D. Kan.1997) (discretionary function exception applied to bystander wounded in courthouse shooting alleging negligence by USMS and private contractor in providing security.)

It is clear that how best to secure prisoners during flight, how to best board and deboard prisoners, including the availability of and types of ramps and stairs to be used, and how best to secure and restrain an inmate who uses a cane, are all choices to be made by U.S. Marshal's Service personnel in the exercise of their discretion. Lemmons points to no statute, policy or regulation to the contrary.

Next, "whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandesse (Varig Airlines)*, *supra,* 467 U.S. at 813-14. Determining how "best [to] accommodate[] the goal of ... safety and the reality of finite agency resources" also involves the exercise of policy judgment. *Varig Airlines*, 467 U.S. at 820. Decisions involving economic burdens or allocations of resources which impinge upon the feasibility and practicability of the agency's program require the balancing of policy objectives. *Varig Airlines*, 467 U.S. at 820; *Dalehite v. United States*, 346 U.S. 15, 42 (1953).

Thus, the decisions JPATS made, about which Lemmons complains, concerning the procedure, method and manner to be followed in deboarding prisoners from an airplane are clearly those kinds of "discretionary" decisions/choices grounded in sound public policy which Congress intended to shield from liability. The policy considerations include: (1) inmate safety, not only Lemmons' safety, but also the safety of the other 112 inmates on board that airplane; (2) the safety of government and other personnel, including not just the personnel on board the plane, but also those responsible for handling and servicing the plane while on the ground and those responsible for holding and transporting prisoners after they deboard; (3) the safety of those members of the public, including those in the immediate area of the active airport and the public generally; and (4) the economics and resource requirements involved in scheduling the transfer of inmates and others around the country by ground and air transportation. All of these considerations speak to the fact that the decisions made by the United States and/or its agents in how Lemmons' transfer was

7

handled, were clearly within its discretionary function, which removes these decisions from the jurisdiction of this court.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Defendant's motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction (DE #12) is **GRANTED**;

(2) All claims having been resolved, this action is **DISMISSED** and **STRICKEN** from the docket.

(3) Judgment in favor of the Defendant, United States of America shall be entered contemporaneously with this Memorandum Opinion and Order.

This March 18, 2011.

Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**